UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRY WILLIAMS, | 1:14-cv-02076-DAD-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION TO DISMISS BE GRANTED IN PART |
| v. | (ECF NO. 25) |
| MARTIN D. BITER and A. MANASRAH, | |
| Defendants. | ORDER DENYING PLAINTIFF'S MOTION FOR EXTENSION OF TIME |
| | (ECF NO. 30) |
| | OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Gerry Williams ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.   This case now proceeds on Plaintiff's First Amended Complaint, filed on May 11, 2015.   (ECF No. 13).   Plaintiff's First Amended Complaint was screened and the Court found that Plaintiff "stated a claim against Defendant Martin Biter and A. Manasrah based on violations of the Eighth Amendment for his claims related to arsenic in the drinking water, valley fever, and a lack of medical care."  (ECF No. 20, p. 1).

On August 17, 2016, Defendants filed a motion to dismiss.   (ECF No. 25).   On September 6, 2016, Plaintiff filed a statement of non-opposition to Defendants' motion to dismiss for failure to exhaust Plaintiff's hepatitis C claim.  (ECF No. 29).  On September 29,

///

///

2016, Plaintiff filed an opposition to the motion to dismiss.[1]  (ECF No. 31).  On October 12, 2016, Defendants filed a reply to Plaintiff's opposition.  (ECF No. 34).  Defendants' motion to dismiss is now before the Court.

Defendants argue that: 1) Plaintiff's claim that he did not receive proper medical care for his hepatitis C should be dismissed for failure to exhaust; 2) the arsenic in KVSP's water supply was deemed non-dangerous by the California Department of Public Health, and Defendants were not deliberately indifferent in remedying the water; 3) Defendant Manasrah was not personally involved in providing or addressing the water; and 4) Defendants are entitled to qualified immunity because it was not a clearly established violation of the Eighth Amendment to allow inmates to consume non-dangerous levels of arsenic in their drinking water or expose them to a naturally occurring spore (the spore that causes Valley Fever).  (ECF No. 25-1, p. 8).

## I.   PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff filed his original complaint on December 29, 2014.  (ECF No. 1).  Magistrate Judge Gary S. Austin[2] screened Plaintiff's complaint and dismissed it with leave to amend. (ECF No. 12).  Plaintiff filed his First Amended Complaint on May 11, 2015.  (ECF No. 13). In the First Amended Complaint, Plaintiff alleges the following.

On or about 2010, Plaintiff was diagnosed with hepatitis C, which required interferon treatment.  Interferon treatment is known to weaken the immune system, increasing the risk of contracting Valley Fever.

On or about April 2012, Plaintiff was transferred to Kern Valley State Prison ("KVSP"), a known Valley Fever hot spot.  On or about September 20, 2012, Plaintiff discovered that he was confined at a prison in a hyperendemic zone where inmates are at the highest risk of contracting Valley Fever, and that KVSP had experienced a dramatic increase in

---

[1] On September 6, 2016, Plaintiff filed a motion for an extension of time to respond to the motion to dismiss.  (ECF No. 30).  Because Plaintiff has already filed his opposition, and because Defendants have not argued that Plaintiff's opposition was untimely, the Court will deny this motion.

[2] Magistrate Judge Austin was the magistrate judge assigned to this case until October 13, 2015. (ECF No. 16).

Valley Fever infections.

On September 28, 2012, Plaintiff submitted a health care form requesting to be tested for Valley Fever and to receive treatment.  Plaintiff continued to submit health care request forms through December 2, 2014, but did not receive any treatment for Valley Fever or Arsenic.  Plaintiff was tested for Valley Fever, but he never received the results.  Defendant Manasrah ordered the test.

On or about April 4, 2013, Plaintiff submitted a health care appeal requesting to be transferred to an institution free of Valley Fever.  On April 25, 2013, Defendant Manasrah interviewed Plaintiff regarding the appeal.  "During the interview, Plaintiff requested to be transferred because of his hepatitis C and whether or not the symptoms he was experiencing was due to Valley Fever."

Defendant Manasrah told Plaintiff that Plaintiff did not have Valley Fever, and that the test Defendant Manasrah conducted was negative for Valley Fever.  On November 4, 2013, the director's level of review denied Plaintiff's appeal, indicating that Defendant Manasrah's evaluation revealed negative results.

On December 11, 2014, Plaintiff received a medical classification chrono, which indicates that Plaintiff is infected with Valley Fever.  Defendant Manasrah had the authority to order a medical transfer for Plaintiff before Plaintiff became infected with Valley Fever, but failed to do so.  As a result, Plaintiff alleges that he contracted Valley Fever.  Plaintiff supports this statement by attaching and citing to the medical classification chrono (ECF No. 13, p. 53).  However, the chrono does not state that Plaintiff has Valley Fever.

On August 3, 2006, the California Department of Corrections and Rehabilitation ("CDCR") issued a memorandum informing top prison officials and health care providers of the illness caused by the Valley Fever organism, with four inmate-patient deaths attributed to the disease.  The memorandum indicated which prisons are located in the Valley Fever endemic areas, which includes KVSP.  The memorandum also indicated which inmate-patients are most susceptible to developing Valley Fever, and implemented strategies to prevent the susceptible inmate-patients from being housed in the endemic area.

On or about June 10, 2013, after becoming aware that KVSP is one of the prisons listed as being located in the Valley Fever endemic area, Plaintiff submitted a letter to Defendant Biter indicating his medical conditions and exposure to toxic arsenic tainted drinking water and Valley Fever.  No corrective actions were taken.

On March 10, 2008, KVSP was issued a notice of violation by the California Department of Public Health due to an exceedance of the federal arsenic mc/l during the first quarter of 2008, with arsenic levels of 0.014 mg/l and 0.022 mg/l, respectively.

Based on data submitted to the Department of Public Health for wells 1 and 2, the running annual average range for these wells for the first quarter was 0.014 mg/l and 0.022 mg/l, respectively.  As a result, KVSP failed to comply with Title 40, the National Primary Drinking Water Regulations, Section 141.62(b)(16), which established the revised federal mc/l for arsenic.

On December 12, 2008, the California Department of Public Health issued another notice of violation, which stated that the KVSP water system was operating wells 1 and 2 that produced water that does not comply with the Primary Drinking Water Standard, that the KVSP water system failed to ensure that a reliable and adequate supply of pure, wholesome, and potable water is provided to all its consumers, and that the water produced by the KVSP water system exceeded the maximum contaminant level of 0.010 mg/l for arsenic and therefore did not comply with the Primary Drinking Water Standard.

On December 12, 2008, KVSP was given notice by the California Department of Public Health that if KVSP failed to perform any of the tasks specified in the order by the time described therein, or by the time subsequently extended pursuant to item 5 of the order, KVSP would be deemed to have not complied with the obligation of the order and may be subjected to additional judicial action, including civil penalties.  The order applied to and was binding upon KVSP, its officers, directors, agents, employees, successors, and assignees, which includes Defendant Biter.

On June 8, 2011, through December 13, 2013, Defendant Biter continued to change the proposed date of completion of the necessary repairs to comply with the Drinking Water

Standards.

Plaintiff alleges that the water at KVSP is contaminated and tainted with high levels of arsenic, a fact that Plaintiff was not aware of until after he was transferred to KVSP in or about April 2012.  Plaintiff filed an inmate appeal requesting testing for arsenic in his body and to be transferred to an institution free of arsenic contaminated water.

Studies show that African-Americans are among the racial groups most likely to develop the chronic and/or disseminated form of Valley Fever when infected, as well as those with weak immune systems.

It is widely known amongst CDCR employees and leading health experts in California that the city of Delano, where KVSP is located, is a Valley Fever hot spot, where the infection rate is higher than other areas of the San Joaquin Valley.  This resulted in the area surrounding KVSP being designated as a Valley Fever endemic area.

While housed at Pleasant Valley State Prison, Plaintiff was diagnosed with hepatitis C. In 2012, Plaintiff was transferred from California State Prison, Los Angeles County, to KVSP, by prison officials with full knowledge of Plaintiff's serious medical condition, and without being informed of the unsafe environmental hazardous conditions of confinement at KVSP.  No corrective actions to transfer Plaintiff to a hazard free environment were taken by Defendant Manasrah to allow safe interferon hepatitis C treatment.

While housed at KVSP, Plaintiff sought the hepatitis C treatment, and was denied by Defendant Manasrah.  However, the treatment has advantages and disadvantages.  Interferon treatment is known to weaken the immune system, and prisoners in the Valley Fever endemic area have been known to contract Valley Fever after beginning interferon treatment, due to the weakened immune system.

Despite Plaintiff's request for a medical transfer, Defendants Biter and Manasrah have failed to secure Plaintiff a medical transfer to a prison where he can obtain the treatment necessary to cure his hepatitis C, or to an environment free of Valley Fever.  No corrective actions have been taken by Defendants Biter and Manasrah.

After being transferred to KVSP, Plaintiff noticed that his health was not good and that

5

he started to incur the following medical conditions: spots on his legs, arms, and body; mucus in his throat; problems breathing; scars on his longs; kidney/bladder problems; prostate problems; blood in urine; coughing; night sweats; fever; and aching joints.  Plaintiff filed requests for medical treatment from September 28, 2012, through December 2, 2014, but did not receive adequate treatment.

After screening Plaintiff's First Amended Complaint, the Court found that "Plaintiff has stated a claim against Defendant Martin Biter and A. Manasrah based on violations of the Eighth Amendment for his claims related to arsenic in the drinking water, valley fever, and a lack of medical care."  (ECF No. 20, p. 1).

## II.   LEGAL STANDARDS

### a.  Motion to Dismiss

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true.  Erickson v. Pardus, 551 U.S. 89, 93–94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976).  The court must also construe the alleged facts in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  In addition, *pro se* pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint.  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer, 416 U.S. at 236 (1974).

The first step in testing the sufficiency of the complaint is to identify any conclusory

allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley, 355 U.S. at 45-46).  A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678 (citing Twombly, 550 U.S. at 556).  The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully."  Id.

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings.  Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077, 1083 (9th Cir. 2001).

### b.  Eighth Amendment and Conditions of Confinement

The Eighth Amendment, which protects prisoners from inhumane conditions of confinement, Farmer v. Brennan, 511 U.S. 825, 833 (1994), is violated when prison officials act with deliberate indifference to a substantial risk of harm to an inmate's health or safety.  E.g., Farmer, 511 U.S. at 828; Thomas v. Ponder, 611 F.3d 1144, 1151–52 (9th Cir. 2010); Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir.2010).

Two requirements must be met to show an Eighth Amendment violation.  Farmer, 511 U.S. at 834.  "First, the deprivation must be, objectively, sufficiently serious."  Id. (internal quotation marks and citation omitted).  Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference."  Id. (internal quotation marks and citation omitted).  Prison officials act with

deliberate indifference when they know of and disregard an excessive risk to inmate health or safety.  Id. at 837.  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006).  The exposure to toxic substances can support a claim under section 1983.  See Wallis v. Baldwin, 70 F.3d 1074, 1076–77 (9th Cir. 1995) (exposure to asbestos).  Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

### c.  Eighth Amendment and Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  Id.  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs.  McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837. "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)). Additionally, a difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058.

### d.  Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. Al–Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right. Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Ashcroft, 563 U.S. at 741) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"Since qualified immunity is a defense, the burden of pleading it rests with the defendant." See Fed.Rule Civ.Proc. 8(c) (defendant must plead any 'matter constituting an avoidance or affirmative defense'); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1271 (1969). It is for the official to claim that his conduct was justified by an objectively

reasonable belief that it was lawful.  We see no basis for imposing on the plaintiff an obligation
to anticipate such a defense by stating in his complaint that the defendant acted in bad faith."
Gomez v. Toledo, 446 U.S. 635, 640 (1980).

III.     **DEFENDANTS' MOTION TO DISMISS**

Defendants argue that: 1) Plaintiff's claim that he did not receive proper medical care
for his hepatitis C should be dismissed for failure to exhaust; 2) the arsenic in KVSP's water
supply was deemed non-dangerous by the California Department of Public Health, and
Defendants were not deliberately indifferent in remedying the water; 3) Defendant Manasrah
was not personally involved in providing or addressing the water; and 4) Defendants are
entitled to qualified immunity because it was not a clearly established violation of the Eighth
Amendment to allow inmates to consume non-dangerous levels of arsenic in their drinking
water or expose them to a naturally occurring spore (the spore that causes Valley Fever).  (ECF
No. 25-1, p. 8).

Plaintiff does not oppose Defendants' motion to dismiss his claim that Defendants
failed to treat his hepatitis C, because, according to Plaintiff, he did not allege this claim.  (ECF
No. 29, p. 2).  Plaintiff also states that he never alleged a claim against Defendant Manasrah
pertaining to the arsenic laced drinking water.  (ECF No. 31, p. 2).  According to Plaintiff, the
only two claims he alleged against Defendant Biter are for subjecting Plaintiff to Valley Fever
and arsenic laced drinking water in violation of the Eighth Amendment, and the only claim he
asserted against Defendant Manasrah was for denial of adequate medical treatment in violation
of the Eighth Amendment.  (Id.).  Thus, to the extent that claims other than these were allowed
through in screening, the Court will recommend that those claims be dismissed.

As to Defendants' assertion that the arsenic in KVSP's water supply was deemed non-
dangerous by the California Department of Public Health, and Defendants were not deliberately
indifferent in remedying the water, Plaintiff states that the water is contaminated and that the
contamination can lead to health problems.  (Id. at pgs. 5-6).  Plaintiff also states that
Defendant Biter was deliberately indifferent, because Defendant Biter was aware that
consuming the contaminated water over a period of years was dangerous, and that he let the

problem go uncorrected for two years without taking reasonable corrective measures.  (Id. at p. 7).

As to Defendants' assertion that they are entitled to qualified immunity because it was not a clearly established violation of the Eighth Amendment to allow inmates to consume non-dangerous levels of arsenic in their drinking water or expose them to a naturally occurring spore, Plaintiff states that Defendants violated clearly established law by housing inmates in an area with Valley Fever (Id. at p. 9) and by allowing inmates to consume drinking water contaminated with arsenic (Id. at pgs. 10-11).

IV.   **ANALYSIS OF DEFENDANTS' MOTION TO DISMISS**

a.   **Conditions of Confinement (Arsenic Levels)**

Defendants argue that Plaintiff's complaint does not state a claim for deliberate indifference to the arsenic level in KVSP's drinking water.  (ECF No. 25-1, p. 17).  According to Defendants, "the face of Plaintiff's amended complaint reveals that the arsenic in KVSP's drinking water did not present a sufficiently serious risk of harm to meet the objective element of the Eighth Amendment.  Plaintiff's exhibits to the amended complaint show that the water did contain arsenic, but the levels of arsenic were not dangerous to Plaintiff and other inmates for the time period that they were exposed."  (Id. at p. 18).  Defendants cite to one of Plaintiff's exhibits (ECF No. 13, p. 55), which states that, according to the District Engineer of the Merced District of California, Department of Public Health, Division of Drinking Water and Environmental Management, it was determined that if a person consumed two liters of water per day for 70 years, that person would have an increased cancer risk of 1 in 10,000 to 1 in 1,000,000.  (ECF No. 25-1, pgs. 11-12).

Plaintiff argues that the water is contaminated and that the contamination can lead to health problems.  (ECF No. 31, pgs. 5-6).  Plaintiff mentions a notice distributed by Defendant Biter that stated that the water quality problem was not an emergency, but acknowledged that drinking contaminated water over a period of years could cause serious damage to an individual's health.  (Id. at p. 6).  Plaintiff also states that Defendant Biter was deliberately indifferent, because Defendant Biter was aware that consuming the contaminated water over a

period of years was dangerous, and that he let the problem go uncorrected for two years without taking reasonable corrective measures.  (Id. at p. 7).

Plaintiff's First Amended Complaint essentially alleges that the KVSP water system exceeded the maximum contaminant level of 0.010 mg/l for arsenic and therefore did not comply with the Primary Drinking Water Regulation.  Plaintiff appears to be alleging that he suffered symptoms as a result of drinking water that contained a level of arsenic that exceeded the Primary Drinking Water Regulation.  Plaintiff attached six notes to the complaint that were signed by Defendant Biter.  (ECF No. 13, pgs. 65-70).  The notices all state that the level of arsenic in the water is not an emergency, but that "some people who drink water containing arsenic in excess of the MCL over many years may experience skin damage or circulatory system problems, and may have an increased risk to getting cancer."  (Id.).

In evaluating this motion to dismiss, in light of the prevalence of this specific complaint by other inmates at KVSP, this Court reviewed decisions of other courts.  It is worth noting that the Ninth Circuit has not yet weighed in on this specific issue.  Nevertheless, the decisions of other courts provide some guidance as to how other courts have evaluated similar allegations against the same legal standards.

Multiple courts have screened out similar allegations from other inmates of KVSP based on elevated levels of arsenic, finding that Plaintiff's allegations do not state a claim under the Eighth Amendment.  For example, Magistrate Judge Gary S. Austin found that a similar complaint failed to state a claim for the following reasons:

> Here, Plaintiff fails to allege that he was subjected to an objectively serious harm.  The fact that the drinking water exceeded an EPA standard by .02 milligrams per liter does not, of itself, subject Plaintiff to an objectively serious harm.  Plaintiff's view that he is in danger of serious physical harm is unsupported by the facts alleged.  Plaintiff's own allegations indicated that a professional physician and Master of Public Health tested the water, and found the arsenic levels to be "insignificant."  Plaintiff fails to allege any facts indicating that he suffered any ill effects, other than his fear of some future harm.  Simply put, the fact that the water violated some regulatory standard does not, of itself, subject officials to liability under the Eighth Amendment.

Huerta v. Biter (E.D. Cal., Mar. 10, 2015, No. 113-CV-00916-AWI-GSA) 2015 WL 1062041,

at *4, <u>report and recommendation adopted</u> (E.D. Cal., Oct. 29, 2015, No. 113CV0916AWIEJPPC) 2015 WL 6690042. Magistrate Judge Dennis L. Beck screened out a similar complaint, based on the lack of medical evidence that Plaintiff's health problems were caused by arsenic, and also because it appears that KVSP was in compliance with arsenic regulations at the time of his medical problems. <u>Slaughter v. Biter</u> (E.D. Cal., Dec. 2, 2014, No. 1:14CV00887 DLB PC) 2014 WL 6819501, at *3. <u>See also</u> <u>Ford v. California</u> (E.D. Cal., Apr. 2, 2013, No. 1:10-CV-00696-AWI) 2013 WL 1320807, at *4 ("The Court has screened Plaintiff's complaint and finds that it does not state any claims upon which relief may be granted under section 1983 or the Safe Drinking Water Act. Plaintiff's sole claim is that arsenic levels violated regulatory standards. Plaintiff's own exhibits indicate that arsenic levels did not rise to the level of endangering his health. The Court finds that this deficiency cannot be cured by further amendment. Plaintiff has alleged, at most, a violation of regulatory standards.").

Additionally, other courts have allowed similar claims to proceed past the pleading stage, only to grant summary judgment in favor of the defendants based on similar facts, albeit on a more fully developed record than here. For example, Magistrate Judge Sheila K. Oberto recommended granting summary judgment in favor of prison defendants, and District Judge Anthony W. Ishii adopted her recommendation, based on finding that there was no dispute of fact regarding the deliberate indifference claim related to arsenic level in KVSP's water. In relevant part, the Court explained:

> Plaintiff has not submitted any evidence demonstrating that the exposure to the levels of arsenic in KVSP's water, which ranged between 0.014 and 0.020 mg/L per the six notices posted, for twenty-seven months constituted an objectively serious risk of harm to his health; it is not enough to merely show that the levels exceeded the EPA's new MCL standard of 0.10 mg/L. *Cf. Wallis,* 70 F.3d at 1076 (stating it is uncontroverted that asbestos poses a serious risk to human health and citing statutes in which there was a Congressional finding that medical science has not established any safe minimum level of asbestos exposure) (quotation marks and citations omitted); *Carter,* 2015 WL 4322317, at *8–10 (finding triable issues of fact on objective element of asbestos exposure claim where there was evidence of government findings that medical science has not established any minimum level of exposure to asbestos, but finding no triable issues of fact on objective element of lead paint exposure claim). Regarding Plaintiff's opinion that the water was not safe, Plaintiff is not

13

qualified, as a lay witness, to offer his own opinion that the arsenic levels were sufficiently high to create a substantial risk of serious harm to his health. Although Plaintiff submitted evidence demonstrating that he developed several warts and nodules, there is no evidence linking those growths to arsenic in the water at KVSP. Speculation that Plaintiff's medical conditions *could* be linked to the arsenic levels is not sufficient in the first instance, but here, Plaintiff did not submit any admissible evidence that even speculatively links the two, and he is not qualified to offer his own opinion on the issue, as it requires medical and/or toxicological expertise he does not possess. . . .

Having considered Plaintiff's evidence and arguments, the Court finds that Plaintiff failed to produce any evidence demonstrating that [the] level of arsenic in KVSP's water presented a substantial risk of serious harm to his health. It is not enough to show merely that the arsenic levels exceeded the new MCL standard; and Plaintiff's inadmissible lay opinion on the matter cannot be used to establish that the water presented an objective risk of serious harm to his health as a matter of law. Plaintiff also failed to produce any evidence "that the risk of which he complains is not one that today's society chooses to tolerate." *Helling,* 509 U.S. at 35–36.

Nguyen v. Biter (E.D. Cal., Sept. 8, 2015, No. 1:11-CV-00809-AWI) 2015 WL 5232163, at *8–9. The Court also sided with the defendant on the issue of deliberate indifference, explaining:

Next, Plaintiff fails to make the requisite showing as to the subjective element of deliberate indifference. Plaintiff has shown that Defendant signed six notices regarding arsenic levels in KVSP's water exceeding the EPA's MCL standard but he has not demonstrated that Defendant knowingly disregarded a substantial risk of harm to his health. Bare knowledge of the fact that the arsenic levels were above the EPA's MCL standard is not sufficient. Indeed, the notices signed by Defendant disclaimed any emergency situation or a need to use alternative water sources, such as bottled water. Plaintiff's opinions that the water was dangerous and that Defendant knew it was dangerous but failed to take additional protective measures do not constitute admissible evidence supporting a finding of deliberate indifference. Further, there is no competent evidence that the elevated levels were dangerously high and constituted an obvious health risk. *Farmer,* 511 U.S. at 842; *Foster,* 554 F.3d at 814.

(Id. at *9).

In another case, Magistrate Judge Michael J. Seng reached the same conclusion in findings and recommendations that recommended granting the defendants' motion for summary judgment, which were subsequently adopted by District Judge Anthony W. Ishii. In

relevant part, Judge Seng explained:

> The real issues in dispute here are whether the levels of arsenic (whether organic, inorganic, or a combination of the two) actually found in KVSP's drinking water and consumed by Plaintiff were dangerous and whether Plaintiff's health problems can be attributed to the arsenic. Rather than submit admissible evidence on either of these issues, Plaintiff makes conclusory statements that are not based on personal experience or professional expertise. Moreover, Plaintiff's lay opinion as to the cause of his symptoms is speculative and inconsistent with the qualified opinions from Dr. Geller. And, finally, Plaintiff's emotional distress related to a fear of future harm cannot serve as the basis of an Eighth Amendment claim absent a showing of physical injury. Plaintiff has simply failed to submit any competent evidence that his symptoms are related to arsenic consumption.
>
> Even assuming, *arguendo,* that Plaintiff had established that the levels of arsenic detected in KVSP's water were sufficiently serious to satisfy the Eighth Amendment's first prong and that he was harmed by it, there is no showing of deliberate indifference. Although Defendant was aware that the level of arsenic in prison water exceeded federal standards, the evidence does not suggests he knew of, and disregarded, a risk that consumption of that water posed a serious threat to inmate health. Rather, the undisputed facts establish that Defendant reasonably inquired of and relied upon on the medical expertise of KVSP's CME, Dr. Lopez, who in turn relied on the expert opinion of Dr. Geller, that the water was safe to drink. Indeed, Defendant himself drank the water. There is no deliberate indifference on these facts.
>
> Having thus examined the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff's entire case rests upon his speculation about the type of arsenic found in KVSP's drinking wells, the dangers of the arsenic-contaminated water at the levels found at KVSP, and the cause of his symptoms.

Johnson v. Cate (E.D. Cal., Sept. 10, 2015, No. 1:10-CV-00803-AWI) 2015 WL 5321784, at

*11 (footnote omitted).

While recognizing that the standard at the motion to dismiss stage is different from summary judgment, this Court recommends granting Defendants' motion to dismiss Plaintiff's claim of a violation of the Eighth Amendment related to arsenic in KVSP's drinking water based on reasoning similar to these other courts. Although Plaintiff's complaint contains 83 pages of allegations and exhibits, Defendants are correct that it ultimately lacks factual allegations that the arsenic in the water at KVSP posed a serious risk of harm or that Defendants acted with deliberate indifference in addressing that risk. While the drinking water

did not comply with the Primary Drinking Water Regulation, there is no evidence that the levels in KVSP's water posed a serious risk of harm merely because they exceeded the Primary Drinking Water Regulation.  Plaintiff's allegations regarding his own medical ailments fail to satisfy this element because they lack the critical link from any test or medical professional that Plaintiff suffered from an elevated arsenic level, or that any of his medical issues were associated with arsenic poisoning.  Moreover, there is no evidence of deliberate indifference. Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety, and there are no non-conclusory allegations showing that Defendants knew of and disregarded an excessive risk to inmate health.  In fact, the documents provided by Plaintiff (ECF No. 13, pgs. 55-56; 63; 64; 65; 66; 67; 68; 69; and 70) seem to show that prison officials did not believe that the elevated levels of arsenic posed an excessive risk. The notices do mention a potential risk if the exposure is long term, but Plaintiff has not been exposed long term, and there are no allegations that Plaintiff will be exposed long term.  In fact, Plaintiff's First Amended Complaint states that "Defendant Biter Continued to Change the proposed date of Completion of the necessary repairs to comply with the Drinking Water Standard." (ECF No. 13, p. 10).  This suggests that Defendant Biter is attempting to bring the drinking water into compliance with the Primary Drinking Water Standard.

Given the Court's conclusion above, the Court need not address Defendants' argument regarding qualified immunity to Plaintiff's claim regarding elevated arsenic levels.

### b. Qualified Immunity from Plaintiff's Eighth Amendment Conditions of Confinement Claim Regarding Exposure to Valley Fever

Defendants argue that they are entitled to qualified immunity from Plaintiff's Eighth Amendment conditions of confinement claim regarding Valley Fever claim.  (ECF No. 25-1, pgs. 21).  Defendants state that "during the times alleged in this lawsuit (2012 to 2013) no cases held that housing inmates in an area where the spores that cause Valley Fever naturally occur constituted an unconstitutional risk." (Id. at p. 23).  Defendants assert that "it has already been determined that there is no binding precedent addressing exposure to Valley Fever.  Wiseman v. Cate, No. 1:14CV00831, 2015 WL 8207341, at *5 (E.D. Cal. Dec. 7, 2015)." (Id. at p. 24).

Defendants further assert that "numerous unpublished decisions have held that confinement in a location where valley fever is prevalent, in and of itself, fails to state an Eighth Amendment claim and that public officials have no duty to affirmatively mitigate the risk." (Id.).  However, Defendants admit that "[s]ome unpublished cases have held that inmates may state a claim when the inmate alleges that he or she has a greater susceptibility to a risk of infection," and that "[t]he Ninth Circuit is similarly unsettled on the question." (Id. at p. 25).

Plaintiff argues that Defendants violated clearly established law by housing inmates in an area with Valley Fever (ECF No. 31, p. 9).  Plaintiff points to Helling v. McKinney, 509 U.S. 25, 35 (1993).  In Helling, the plaintiff alleged that he was assigned to a cell with another inmate who smoked five packs of cigarettes a day.  Id. at 28.  One issue was whether this exposure to environmental tobacco smoke (ETS) could state a valid claim under the Eighth Amendment, even though Plaintiff had not yet suffered harm.  Id. at 30.  The Supreme Court upheld the decision of the Court of Appeals, finding that the plaintiff stated "a cause of action under the Eighth Amendment by alleging that petitioners have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health."  Id. at 35.  Plaintiff argues that this case shows that it was clearly established that officials cannot expose prisoners to conditions that pose an unreasonable risk of serious damage to the prisoners' future health, and that Valley Fever is one of those dangerous conditions.  (ECF No. 31, pgs. 9-10).

While the law is unsettled, the Court has found Judge Michael J. Seng's analysis in Allen v. Kramer, No. 115CV01609DADMJSPC, 2016 WL 4613360 (E.D. Cal. Aug. 17, 2016) persuasive.[3]  Judge Seng notes that:

> In those Valley Fever cases that have reached the question of qualified immunity, the constitutional right has been defined as an inmate's right to be free from exposure to the environmental toxin, coccidiomycosis. See, e.g., Jackson I,

---

[3] After Judge Seng issued the order finding that qualified immunity did not protect the defendants at the current stage of the proceeding, he issued findings and recommendations, finding cognizable claims against some of those defendants.  Allen v. Kramer, 2016 U.S. Dist. LEXIS 130030, *1 (E.D. Cal. Sept. 22, 2016).  District Judge Dale A. Drozd adopted the findings and recommendations in full.  Allen v. Kramer, 2016 U.S. Dist. LEXIS 162844, *2 (E.D. Cal. Nov. 23, 2016).

2015 WL 5522088, at *17 ("[T]he constitutional right at issue in this case must take into account the specific Valley Fever context in which this case arose"), overruled on other grounds by Jackson II; Smith v. Schwarzenegger, Case No. 1:14-cv-60-LJO-SAB, 137 F. Supp. 3d 1233, 1243 (E.D. Cal. Oct. 7, 2015), appeal docketed Case No. 15-17155 (9th Cir. Oct. 29, 2015) (defining the right in the context of "an inmate's exposure to cocci while incarcerated"); Jackson II, 134 F. Supp. 3d at 1238 (same); Smith, 2016 WL 398766, at *3 (noting "the lack of authority delineating the contours of the rights of inmates vis-à -vis exposure to coccidiomycosis."). See also Hines v. Youssef, Case No. 1:13-cv-0357-AWI-JLT, 2015 WL 2385095, at *9 (E.D. Cal. May 19, 2015), appeal docketed, No. 15-16145 (9th Cir. June 8, 2015) ("[I]n the context of the application of criteria for exclusion from endorsement to prisons in the cocci hyper-endemic zone in 2008, the right to exclusion on account of any factors not previously recommended by an authoritative source or ordered by the receiver prior to the time of endorsement was not clearly established.")

Under this factually specific definition, it is true that there is no controlling authority regarding an inmate's right to be free of exposure to coccidiomycosis, and it is also true that "there has been longstanding disagreement among the judges of this district as to whether and under what circumstances inmates housed at prisons in the San Joaquin Valley, where Valley Fever is endemic, may state an Eighth Amendment claim for being exposed to Valley Fever spores while incarcerated." See Jackson II, 134 F. Supp. 3d at 1240 (citing Jones v. Hartley, Case No. 1:13-cv-1590-AWI-GSA, 2015 WL 1276708, at *2-3 (E.D. Cal. Mar. 19, 2015) (collecting cases)).

But this level of specificity is precisely the type cautioned against by the Supreme Court. Determining whether the contours of a right are sufficiently clear does "not require a case directly on point." al-Kidd, 563 U.S. at 741. Rather, it requires that "existing precedent must have placed the statutory or constitutional question beyond debate." Id. In that regard, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 US 730, 741 (2002). Indeed, the earlier cases need not even have facts that are "fundamentally similar" or "materially similar." See id. Though such cases "can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." Id.

Consistent with other judges in this District, this Court declines to define the constitutional right at a high level of generality. That is to say, the right cannot be defined as the right to be free from mere exposure to all environmental toxins. However, the undersigned also declines to swing the pendulum the other way and define the right at a highly specific level relating only to the particular toxin at issue here, i.e., coccidiomycosis. To be so fact-specific would likely entitle a defendant to qualified immunity in every novel factual scenario. This Court thus settles on a definition that falls somewhere in between.

Allen, No. 115CV01609DADMJSPC, 2016 WL 4613360, at *5-6.

After conducting extensive analysis and evaluation of relevant case law, Judge Seng concluded that the relevant clearly established legal right was that "Plaintiff has a right to be free from exposure to an environmental hazard that poses an unreasonable risk of serious damage to his health whether because the levels of that environmental hazard are too high for anyone in Plaintiff's situation or because Plaintiff has a particular susceptibility to the hazard." Allen, No. 115CV01609DADMJSPC, 2016 WL 4613360, at *6.  In coming to this conclusion, Judge Seng relied on Helling: "This definition takes into account the facts of this case without being overly and unnecessarily specific.  It also stems directly from the holding of Helling v. McKinney, 509 U.S. 25 (1993), which the Court concludes 'placed the statutory or constitutional question beyond debate.'  al-Kidd, 563 U.S. at 741."  Allen v. Kramer, No. 115CV01609DADMJSPC, 2016 WL 4613360, at *6.  Additionally, as Judge Seng noted:

> Though Helling directly addressed an inmate's exposure to ETS, it tacitly acknowledged other situations in which environmental factors can pose an unreasonable risk to an inmate's health, including exposure to "infectious maladies such as hepatitis and venereal disease" caused by overcrowding, unsafe drinking water, and "toxic or other substances."  509 U.S. at 33, 35. Along these lines, courts have relied on Helling to hold that an inmate has the right to be free from exposure to another environmental toxin, asbestos.  In Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995), for example, the Ninth Circuit was asked to consider whether the district court improperly entered summary judgment for the defendants on plaintiff's Eighth Amendment conditions of confinement claim: "[T]he critical question before the district court was whether the defendants acted with 'deliberate indifference' in exposing Wallis to the asbestos in the [prison's] attics."  Id. at 1076 (citing Helling).  Noting that "[i]t is uncontroverted that asbestos poses a serious risk to human health," the Court reversed the grant of summary judgment after concluding that the evidence established that the defendants knew of the existence of the asbestos in the attic and the threat to the inmates' health from exposure to it but nonetheless forced plaintiff to clean the attic without protection.  Id. See also McNeil v. Lane, 16 F.3d 123 (7th Cir. 1993) (finding that plaintiff's claim of mere exposure to asbestos insufficient to state a claim under Helling); Doyle v. Coombe, 976 F. Supp. 183, 188 (W.D.N.Y. 1997) ("It was not until 1993 that the United States Supreme Court held [in Helling] that an Eighth Amendment claim may be established from exposure to substances which might cause a delayed injury."); Gonyer v. McDonald, 874 F. Supp. 464, 466 (D. Mass. Feb. 1, 1995) (citing Helling in finding a cognizable Eighth Amendment claim for exposure to asbestos); Carter v. Smith, 2015 WL

4322317, at *7 (N.D. Cal. July 15, 2015) ("Exposure to toxic substances may be a sufficiently serious condition to establish the first prong of an Eighth Amendment claim, depending on the circumstances of such exposure, as explained by the Supreme Court in <u>Helling</u> .... Although <u>Helling</u> was a second-hand smoke case, the rule also applies to asbestos exposure.")

<u>Helling</u> has also been cited in cases involving exposure to other environmental factors claimed to pose an unreasonable risk of harm to health, including contagious diseases caused by overcrowding conditions, <u>Brown v. Mitchell</u>, 327 F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004); contaminated water, <u>Carroll v. DeTella</u>, 255 F.3d 470, 472 (7th Cir. 2001); compelled use of chemical toilets, <u>Masonoff v. DuBois</u>, 899 F. Supp. 782, 797 (D. Mass. Sep. 11, 1995) ("[I]f the future harm resulting from exposure to second-hand smoke can give rise to an Eighth Amendment violation, then surely daily contact with a hazardous substance which causes rashes, burning, tearing eyes and headaches meets the objective part of the test for a violation of the Eighth Amendment."); paint toxins, <u>Crawford v. Coughlin</u>, 43 F. Supp. 2d 319, 325 (W.D.N.Y. 1999); and other inmates' blood, <u>Randles v. Singletary</u>, 2001 WL 1736881, at *2 (M.D. Fla. Aug. 10, 2001).

<u>Allen</u>, No. 115CV01609DADMJSPC, 2016 WL 4613360, at *7-8 (footnote omitted).

The Court believes that, as laid out in Judge Seng's order (<u>id.</u>), defining the right in this way strikes the appropriate balance between taking into account the facts of this case and the Supreme Court's admonition in <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 742 (2011) that courts should "not define clearly established law at a high level of generality."  Thus, this Court evaluates Defendants' qualified immunity defense against what this Court believes is the right at issue, namely that **"Plaintiff has a right to be free from exposure to an environmental hazard that poses an unreasonable risk of serious damage to his health whether because the levels of that environmental hazard are too high for anyone in Plaintiff's situation or because Plaintiff has a particular susceptibility to the hazard."** <u>Allen</u>, No. 115CV01609DADMJSPC, 2016 WL 4613360, at *6.

The Court then looks to the allegations in Plaintiff's complaint to determine if Plaintiff has alleged conduct that, construing the facts in favor of Plaintiff, violates this right, and that every reasonable official would have understood to violate this right.  Here, Plaintiff has alleged that he was exposed to an environmental hazard that poses an unreasonable risk of serious damage to his health (Valley Fever), and that he has a particular susceptibility to that

hazard, i.e., Valley Fever, because of the required treatment for his hepatitis C (ECF No. 13, p. 7)[4], and because he is an African American (ECF No. 13, pgs. 31-33).  Plaintiff further alleges that Defendants were aware of this risk, but did nothing to remedy it.

This Court recommends finding, at this stage in the case, that Plaintiff has pled facts showing that his rights were violated.  Additionally, based on the case law described above and construing facts liberally in favor of Plaintiff, Plaintiff has pled facts showing that every reasonable official would have understood that their actions violated Plaintiff's rights.  Thus, the Court recommends finding that, at this stage in the proceedings, Defendants are not entitled to qualified immunity.  However, the Court notes that this finding is based solely on construing the facts alleged as true and in favor of Plaintiff, which the Court must at this stage in litigation. This finding is without prejudice to Defendants asserting this defense at a later stage in the proceeding.

### c.   Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

The Court found in its screening order that "Plaintiff has stated a claim against Defendant Martin Biter and A. Manasrah based on violations of the Eighth Amendment for his claims related to arsenic in the drinking water, valley fever, and a lack of medical care." (ECF No. 20, p. 1).  Defendants moved to dismiss the claim for lack of medical care to the extent that it relied on Plaintiff's treatment (or lack thereof) for hepatitis C.  However, Plaintiff has stated that this was never a claim (ECF No. 29, p. 2).

The Court has reviewed the screening order, and it is ambiguous as to what exactly was included in the lack of medical care claim.  The screening order simply states "Plaintiff has stated a claim against Defendant Martin Biter and A. Manasrah based on violations of the Eighth Amendment for his claims related to… a lack of medical care."  (Id.).  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it

---

[4] The Court notes that based on the First Amended Complaint it appears that Plaintiff is not receiving treatment for his hepatitis C.

rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The First Amended Complaint did not provide Defendants with fair notice of what this claim is and the grounds upon which it rests.  It appears that neither Defendants nor the Court understood exactly what Plaintiff was attempting to assert.  When laying out his claims in his First Amended Complaint, Plaintiff states that "Plaintiff's medical conditions, as described herein, constitute a serious medical need in that the failure to treat these conditions has resulted in further significant injury, and the ongoing failure to treat it is likely to cause more serious injury.  Said injuries has [sic] included, but necessary been limited to having Valley Fever, extreme bladder distension, skin pigmentation, blood in urine, scar on lungs, kidney problems, prostate problems, coughing, night-sweats, fever, aching joints, and severe pain."  (ECF No. 13, p. 16).  Based on these facts, it is unclear exactly what medical conditions Plaintiff is alleging have gone untreated.  Defendants apparently believed that Plaintiff was referring to his hepatitis C, although Plaintiff has stated that this was not the case.

Upon reviewing the complaint, it appears that Plaintiff may be alleging that Defendant Manasrah failed to treat his Valley Fever.  However, the Court finds that Plaintiff has failed to sufficiently allege that he even has Valley Fever.  Plaintiff states that he was tested for Valley Fever, and was told that his test results were negative.  Plaintiff then states that he later received a medical classification chrono that indicated that he contracted Valley Fever.  However, the medical classification chrono that Plaintiff attached to the complaint does not state that Plaintiff contracted Valley Fever (ECF No. 13, p. 53).   Accordingly, based on the facts alleged in the First Amended Complaint, it does not appear that Plaintiff contracted Valley Fever and thus did not suffer harm from a failure to received medical care at this stage.

Additionally, Plaintiff has stated that he only brought this claim against Defendant Manasrah.  (ECF No. 31, p. 2).  However, when referring to this claim, the First Amended Complaint clearly mentions more than one defendant (e.g., "the defendants have acted intentionally…."; "Defendants' conduct violated 42 U.S.C. § 1983…."; and "As a proximate result of the defendants conduct…." (ECF No. 13, p. 16)).

Accordingly,   the   Court   provided   Plaintiff   with   the   applicable   law   above,   and

recommends dismissing Plaintiff's claim against Defendant Manasrah for deliberate indifference to serious medical needs in violation of the Eighth Amendment, with leave to amend. The Court notes that Plaintiff should only file an amended complaint if this recommendation is adopted by District Judge Dale A. Drozd, and if Plaintiff believes he can allege additional true facts that would show that Defendant Manasrah was deliberately indifferent to his serious medical needs.

Additionally, if Plaintiff does file an amended complaint, he is advised that an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. In this situation, it would be appropriate for Plaintiff to use the current complaint and merely add any additional claims or factual allegations regarding a deliberate indifference to serious medical needs claim against Defendant Manasrah regarding Valley Fever. Once an amended complaint is filed, the prior complaints no longer serve any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

## V.    CONCLUSION

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 25) BE GRANTED IN PART;

2. To the extent that Plaintiff asserted a claim against Defendants for failure to treat his hepatitis-C in violation of the Eighth Amendment, that claim be DISMISSED;

3. To the extent that Plaintiff asserted a claim against Defendant Biter for deliberate indifference to serious medical needs in violation of the Eighth Amendment, that claim be DISMISSED;

4. To the extent that Plaintiff asserted an Eighth Amendment conditions of confinement claim against Defendant Manasrah for exposing Plaintiff to Valley

Fever in violation of the Eighth Amendment, that claim be DISMISSED;

5. To the extent Plaintiff asserted an Eighth Amendment conditions of confinement claim against Defendant Manasrah pertaining to the arsenic laced drinking water, that claim be DISMISSED;

6. Plaintiff's Eighth Amendment conditions of confinement claim related to exposure to high levels of arsenic in the drinking water be DISMISSED;

7. Plaintiff's claim against Defendant Manasrah for deliberate indifference to serious medical needs in violation of the Eighth Amendment be DISMISSED, WITH LEAVE TO AMEND; and

8. Defendants' claim of qualified immunity to Plaintiff's claim of violation of the Eighth Amendment in relation to Valley Fever be DENIED, without prejudice;

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **thirty (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **ten (10) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, it is ORDERED that Plaintiff's motion for an extension of time (ECF No. 30) is DENIED.

IT IS SO ORDERED.

Dated:   **January 30, 2017**           /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE